WHALE v. PEARSON et al.

No. 33687.   July 19, 1949.

*208 P. 2d 552.*

John Allen Phillips II, of Durant, for plaintiff in error.

Roy B. David and Roy Paul, both of Durant, for defendants in error.

O'NEAL, J. This is an appeal from a decree of the district court of Bryan county for the specific performance of a contract for the sale of real property. Defendants in error, plaintiffs below, were the surviving wife and five children of D. V. Pearson, deceased. Said D. V. Pearson, on July 25, 1935, entered into a contract in writing with S. A. Whale, plaintiff in error, defendant below, for the purchase of certain real property located in Bryan county, Okla., described as Part of lot 1, block 77, in the city of Durant, Okla.

The purchase price of said property was $675. As found by the trial court, purchaser paid $25 down, and, under the contract, was to pay the balance, including interest at the rate of 8 per cent, computed annually, in monthly installments of $8.15. Purchaser went into possession and the contract required him to pay all taxes and to keep the property insured against fire and tornado for not less than $600.

The contract further provided that if purchaser failed to pay taxes as they became due, or to keep the property insured, then the seller, Whale, could, at his option, pay such tax and insurance, and the money so expended by him would become a lien against the property bearing interest at 10 per cent. The contract further provided that any failure on the part of the purchaser to make the payments specified, or his failure to comply with any of the covenants contained in the contract, "shall mature all payments at the option of the owner or holder of this contract by assignment to whom same may be assigned and shall render this contract null and void and the party of the first part, his successors or assigns may recover said property by immediate possession of said premises and retain all payments made as liquidated damages for rent."

Plaintiffs in their petition alleged:

"That D. V. Pearson made the payments as provided in said contract upon said above described premises until the date of his death, to wit: July 6, 1939, and that upon the death of the said D. V. Pearson he left surviving the following heirs:

"Birdie Pearson wife; Dorothy Charlton nee Pearson, daughter; Joyce Cooper nee Pearson, daughter; Billie Jo Balch nee Pearson, daughter; Stanley Ray Pearson, son, age 16; and Betty Jean Pearson, daughter, age 13, and that on the date of the death of said D. V. Pearson, Joyce Cooper nee Pearson was a minor and Billie Jo Balch nee Pearson, was also a minor and under legal age.

"Plaintiffs allege that Birdie Pearson, their mother, continued in possession of the above described property after the death of her husband, D. V. Pearson and continued to make payments

as provided in said contract up until July of 1942, to the defendant, S. A. Whale, until she had paid a total of approximately $790, and that thereafter, Mrs. Dorothy Charlton nee Pearson made payments upon said above described premises of approximately $310. And thereafter said above described premises was rented by the said defendant, S. A. Whale or Mrs. Birdie Pearson to a Mr. Farmer who paid rent which was collected by the said defendant, S. A. Whale, in the sum of $420.00, making a total consideration received by said defendant, S. A. Whale, upon said contract of approximately $1500."

Plaintiffs further alleged that defendant had made certain improvements on the premises, for which he was entitled credit; and that after the death of D. V. Pearson, Birdie Pearson borrowed from defendant the sum of $150 and gave him a quitclaim deed to the property as a mortgage to secure said loan.

Plaintiffs further alleged:

" . . . that there has been no administration of the estate of D. V. Pearson, deceased and that there has been no Guardian appointed in behalf of the minor plaintiffs in this action and that all the plaintiffs are residents of the State of Oklahoma, and that the defendant is a resident of Bryan County, State of Oklahoma . . . . that the said defendant, S. A. Whale, acquired possession of said above described property by a suit in the Justice Court from the plaintiff, Birdie Pearson, and that said Justice Court had no jurisdiction of the subject matter and the judgment thereof is wholly void."

Defendant answered admitting that plaintiff, Birdie Pearson, is the mother and next friend of Stanley Ray Pearson and Betty Jean Pearson, minors, and that she is the surviving wife of D. V. Pearson; and that the other plaintiffs, Dorothy Charlton, nee Pearson, Joyce Cooper, nee Pearson, and Billie Jo Balch, nee Pearson, are the surviving children and heirs-at-law of D. V. Pearson, deceased.

Defendant also admitted the execution of the contract sued upon and that

D. V. Pearson made all payments under said contract until about July 6, 1939. He denied that plaintiffs, or any of them, kept up and made the payments; he alleged that by reason thereof all the rights, title and interest of plaintiffs under said contract were forfeited. He further alleged that possession of said premises was delivered to him in September, 1940, and at that time plaintiff, Birdie Pearson, delivered to him a quitclaim deed for the purpose of conveying any possible interest she might have had under said contract, and further alleged:

" . . . that the said Birdie Pearson and her children had no interest in the premises whatsoever, but that because of the friendship which had existed between the late D. V. Pearson and the defendant, and because defendant wishes to resolve all questions and doubt in favor of said Mrs. Pearson, defendant paid to her $150.00, by way of a compromise settlement. That having conveyed her interest in said premises by Quit Claim Deed for a good and valuable consideration she is estopped to assert any claim or title to the premises."

The issues were tried to the court, both parties waiving jury. At the close of the trial the court made findings of fact and conclusions of law favorable to plaintiffs and entered a decree for plaintiffs to recover from the defendant the property involved in the following proportions:

Birdie Pearson an undivided 1/3 interest and each of the five children of D. V. Pearson, deceased, an undivided 2/15 interest.

The decree quieted title in plaintiffs accordingly. From this judgment and decree, defendant, Whale, appeals.

There are several assignments of error, but those presented and relied upon are (1) that the court erred in finding that defendant had not exercised his option to forfeit and cancel the contract, and that the contract had never been rescinded in any action in a court of law; (2) that the court erred

in its conclusion of law that quitclaim deed executed by defendant in error, Birdie Pearson, to plaintiff in error failed for want of consideration.

Under the first assignment counsel for defendant cites a number of authorities to the effect that an agreement may in its terms provide for its becoming void in a certain event, or it may reserve to one or the other of the parties an option to rescind in a certain event, in which case the contract may become void or be rescinded according to terms without any further agreement between the parties; and also that a provision in a contract of sale that if the purchaser shall not pay the money on a certain day, the contract should be void, gives an option to the seller to rescind the contract upon the specific default of the purchaser.

With those authorities we find no fault. But in this case, the decisive question is not the right of the defendant to rescind, but is whether or not he had effectively done so.

The uncontradicted evidence is that D. V. Pearson in his lifetime made the payments called for by the contract for a period of four years, that is, 48 payments of $8.15 each.

The evidence shows that D. V. Pearson died on or about July 6, 1939, and that after his death his widow, Birdie Pearson, paid about eight installments of $8.15 each between July 6, 1939, and July 1, 1940. These 56 payments were from July, 1935, to March, 1940. From March 1 to October, 1940, she paid nine installments of $10 each, and between November, 1940, and March, 1942, she made five payments of $11.50 each.

In June, 1942, defendant, Whale, brought an action and obtained a judgment against Birdie Pearson in the justice of the peace court for the possession of said premises. At that time, Dorothy Charlton, nee Pearson, one of the daughters of D. V. Pearson and Birdie Pearson, was married and living on the premises. Between June, 1942, and July 6, 1944, Dorothy made 28 payments of $11.50 each to defendant. She testified that said payments were made on the contract, $8.15 of each payment to be applied on the current installment and the balance, $3.35, to be applied on delinquent or past-due installments. Defendant, Whale, testified that he rented the property to Dorothy and that said payments to him were for rent and not payments on the contract. About August 6, 1944, Dorothy rented the premises to a Mr. Farmer. He paid directly to defendant, Whale, between August, 1944, and October, 1946, $575. The property was then vacant for about a month and defendant rented the same to a Mr. Phelps at $22.50 a month and Mr. Phelps paid rent in the total sum of $247.50. In all, defendant had received from the property the sum of $1,748.42, plus the down payment of $25, making a total of $1,773.42. Defendant had paid taxes and insurance for which plaintiffs concede he is entitled to a credit in the sum of $138.40. He also made certain improvements of the value of $100, for which plaintiffs concede he is entitled to credit. The total purchase price, including interest, taxes paid, repairs made, and the disputed item of $150, amount to about $1,638.42. If defendant never effectively rescinded the contract, he has been overpaid to the extent of about $135.

It is well settled in this state that the vendor in an executory contract for the sale of real property, upon default by the vendee, may elect one of several remedies if such are not excluded by the contract. Sparks v. Trosper, 186 Okla. 289, 97 P. 2d 81; Stone v. Ritzinger, 194 Okla. 653, 153 P. 2d 1006.

As pointed out in Stone v. Ritzinger, supra, these remedies are enumerated in 66 C.J. 1206. Also see 55 A.J. 845.

Among the remedies pointed out is that the vendor may rescind the contract in toto with the usual rights and duties attendant upon such act.

It is the contention of defendant that he did rescind the contract.

In 66 C.J. 768, 769, it is said:

"Ordinarily, if the vendor desires to rescind or forfeit a contract of sale and payments thereunder for default in performance, notice of his intent must be given. Thus, unless notice is waived, it is necessary when time is not of the essence of the contract. So, also, such notice is necessary when by the terms of the contract the vendor is given the option to rescind or forfeit the contract on default of the purchaser in performance, . . . "

One of the provisions of the contract involved is:

"Any failure on the part of the party of the second part to make payments as specified above, or comply with any of the covenants contained herein, shall mature all payments at the option of the owner or holder of this contract by assignment to whom same may be assigned and shall render this contract null and void and the party of the first part, his successors or assigns may recover said property by immediate possession of said premises and retain all payments made as liquidated damages for rent."

As shown above, notice is necessary where the vendor has permitted the purchaser to take possession of the property and has received part of the purchase money from him. Therefore, notice was necessary in the instant case.

July 1, 1940, defendant wrote plaintiff, Birdie Pearson, as follows:

"Mrs. D. V. Pearson,
"Durant, Oklahoma.
"Dear Mrs. Pearson:

"As you have failed to reply to my letter of June 22nd, relative to the delinquent payments on property sold your husband, I therefore according to provisions of contract, declare said contract forfeited.

"Unless you voluntarily vacate, I will be forced to take legal action and inforce the provisions of said contract.
                    "Yours truly,
                    "S. A. Whale"

That was the only notice given by defendant of his intention to rescind or forfeit the contract. If by the terms of the contract it is optional with the vendor to rescind or forfeit the contract on default, the notice should be to the effect that the contract will be rescinded or forfeited unless the purchaser performs covenants of the contract within a reasonable time therein specified. 66 C.J. 773-74.

The notice given by defendant did not comply with that requirement.

Ordinarily, notice may be served on the purchaser or those representing him in interest. It is well settled in this state that a contract for the sale of land, bona fide, made for a valuable consideration vests the equitable interest in the vendee from the time of the execution of the contract. Adams v. White, 40 Okla. 535, 139 P. 514; Bledsoe v. Peters, 98 Okla. 41, 224 P. 288. In the latter case it is held:

"A justice of the peace has no jurisdiction in an action of forcible entry and detainer in which the vendor of real estate brings an action to recover the possession of premises against a purchaser to whom he has made a contract for the sale of the land, and whom he has put in possession thereof, and who had made default in the payment of the purchase price. The remedy is by an action in the district court to rescind the contract, or to foreclose the equitable interest of the purchaser."

There the holding was exactly the same as in Smith v. Kirchner, 7 Okla. 166, 54 P. 439.

On the death of the purchaser, D. V. Pearson, while in possession of the premises under the contract, his equitable interest in said premises descended to his widow, Birdie Pearson, and to his five children. They were his successors in interest and were in possession of the property and had made some payments after the death of D. V. Pearson. No notice of intention to rescind was ever given to any of the children of D. V. Pearson, deceased. Furthermore, if the remedy of the vendor, Whale, was an action in the district court to rescind the contract,

it is certain that that remedy was not pursued. Instead, defendant proceeded before a justice of the peace, who, under the above decision, was without jurisdiction. But there is another compelling reason for holding the defendant had not effectively rescinded the contract—there is a rule that:

"Where, subsequent to the time when grounds arise for forfeiture or rescission, the vendor acquiesces therein and treats the contract as still subsisting, he thereby waives the right to forfeit or rescind the contract on those grounds." 66 C.J. 780.

As above stated, the court found:

"The court further finds that from 1937 and through 1946, both years inclusive, the party of the first part plead and was allowed Homestead Exemption for and on behalf of the surviving spouse and heirs of party of the 2nd part."

This finding is not challenged. To obtain the homestead exemptions it was necessary for defendant, when applying for the same on behalf of Birdie Pearson and her five children, to make a showing under oath that said Birdie Pearson was the owner and in actual possession of the land on the 1st day of January of each of the six years from 1941 to 1946, inclusive.

It thus appears that defendant, Whale, was claiming that from 1940 to 1946, the property belonged to him for the purpose of receiving rents and profits but belonged to Birdie Pearson and her children for the purpose of reducing taxes thereon and relieving defendant of the necessity of paying taxes thereon to the extent of the valuation of $1,000 each year. When defendant for such purpose treated the contract as subsisting, he thereby waived or lost the right to forfeit or rescind said contract.

What we have said with reference to defendant's claim of ownership applies to the second assignment of error. Defendant contends that he obtained a quitclaim deed from Birdie Pearson for a valuable consideration, and therefore the finding of the trial court of failure of consideration is not supported by sufficient evidence. On the other hand, Birdie Pearson claimed and testified that the $150 she obtained from defendant when she signed said quitclaim deed was a loan and that defendant represented to her that it was a mortgage to secure said loan to be paid later. That transaction was in September, 1940. For six years thereafter defendant treated the land as belonging to Birdie Pearson and her children. His conduct in so doing is inconsistent with claim of ownership in himself, but is entirely consistent with the claim of plaintiff, Birdie Pearson.

Under the record and findings of the court, the judgment and decree rendered by the trial court was entirely proper.

Affirmed.

DAVISON, C.J., and WELCH, GIBSON, LUTTRELL, HALLEY, and JOHNSON, JJ., concur.